# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

THOMAS TEMME and SHIRLEY TEMME, individually
and as a class of persons similarly situated

            Plaintiffs,

  v.                                                           Case No. 08-CV-090

BEMIS COMPANY, INC.,

            Defendant.

_____

## ORDER

Plaintiffs Thomas Temme and Shirley Temme ("the Temmes") filed a class action lawsuit against defendant Bemis Company, Inc. ("Bemis") arising from Bemis's alleged failure to provide life-time retiree health benefit coverage at the levels promised in a 1985 Plant Closing Agreement ("the Agreement"). The Temmes purport to represent a class of retirees, spouses, surviving spouses and dependents receiving health benefits from Bemis under the Agreement. The Temmes now move the court for certification of the proposed class. Based on the analysis set forth below, the court will grant the motion for class certification.

## BACKGROUND

The proposed class members are former employees of the Hayssen Manufacturing Company ("Hayssen") plant in Sheboygan, Wisconsin, and their spouses, surviving spouses and dependents. Hayssen is a subsidiary of the defendant, Bemis, and closed its Sheboygan plant in 1985. At that time, the bargaining unit employees of the plant were represented by the International Union,

United Automobile, Aerospace and Agricultural Implement Workers of America, and its Local 1423. The union entered into a plant closing agreement with Hayssen in November 1985. Bemis has provided health benefits under the agreement to covered retirees and their spouses and dependents ever since. Bemis transferred health coverage for these individuals from a Blue Cross/Blue Shield plan to a CIGNA health plan effective January 1, 2005. The switch in health plans resulted in increased deductibles and prescription drug co-pays for participants. Two years later, on January 1, 2007, Bemis made additional changes by eliminating prescription drug coverage. The Temmes assert that the changes constitute reductions in benefits, thereby breaching the Plant Closing Agreement and violating the Employee Retirement Income Security Act (ERISA) and the Labor Management Relations Act (LMRA).

The Temmes filed a motion for class certification in conjunction with their lawsuit. In their motion, the Temmes propose a class consisting of all persons who, as of December 31, 2004,[1] were receiving health benefits from Bemis pursuant to the November 5, 1985 closing agreement covering production and maintenance employees at Hayssen's Sheboygan facility. The Temmes' motion for class certification is now before the court.

---

[1] The plaintiffs' motion for class certification states that they seek certification of a class "consisting of all persons who as of December 31, **2004** were receiving health benefits from Bemis..." (Pls.' Mot. Class Cert. 1) (emphasis added). However, the plaintiffs' complaint specifies that the proposed class "consists of all persons who as of December 31, **2006** were receiving health benefits from Bemis pursuant to the closing agreements..." (Pls.' Compl. ¶ 21) (emphasis added). The court considers the class proposed in the motion for class certification as the plaintiffs' putative class.

-2-

**ANALYSIS**

Federal Rule of Civil Procedure 23 governs class action lawsuits. The court conducts a two-step analysis under the rule to determine whether class certification is appropriate. The plaintiff must first satisfy the four prerequisites established in Rule 23(a), which include: 1) numerosity; 2) commonality; 3) typicality; and 4) adequacy of representation. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *See also* Fed. R. Civ. P. 23. Failure to meet any of the prerequisites of the rule precludes class certification. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). In addition, the plaintiff must also satisfy one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). The court will address each of the requirements in turn.

**I.  Numerosity**

Numerosity, pursuant to Rule 23, requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In determining whether joinder is impractical, the court considers the potential size of the class, the geographic disbursement of potential members, the type of relief sought, and the "practicality of relitigating the central issues of the controversy." *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 441 (N.D. Ill. 2008). The determination is not a mere numerical threshold; as few as 40 members can render joinder impractical under particular circumstances. *See id.*

Case 2:08-cv-00090-PJG   Filed 05/28/09   Page 3 of 17   Document 50

The Temmes assert that there are approximately 50-53 members of the putative class. However, Bemis contests the approximation and asserts that the actual number of class members is 25, representing only 16 households. Bemis arrives at this alternative number by arguing that certain potential class members are not covered by the Plant Closing Agreement because they retired prior to the Agreement's effective date. Thus, Bemis concludes, these retirees cannot claim a breach of the Agreement and cannot constitute putative class members. Bemis further argues that the plaintiffs fail to explain why joinder of these individuals would be impractical.

If this court accepts Bemis' argument regarding applicability of the Agreement to only 25 potential class members, then the number of potential members likely does not constitute the "numerosity" required under Rule 23. However, this court does not read the Plant Closing Agreement so narrowly. Instead, the court finds that, for purposes of class certification, the Plant Closing Agreement and its health benefits provisions apply to all the Hayssen Sheboygan plant retirees, spouses, surviving spouses and dependents currently receiving health benefits from Bemis, regardless of whether the underlying retirement occurred before or after November 1985.

To resolve the applicability of the Agreement to all putative class members, the court first looks to the language of the Plant Closing Agreement. The language does not explicitly state whether or not the Agreement incorporates health benefit

-4-

guarantees made to pre-Agreement retirees under previous collective bargaining agreements. Instead, the language guarantees the eligibility of certain individuals for retiree health benefits. The Agreement reads in relevant part:

> Retired Employee Medical Benefit
> Individuals who attain age 60 and have at least six years of continuous service by 12-31-85, and who elect to commence their retirement benefits by 12-31-85, will be eligible for the retired employee medical benefit. Individuals who attain age 58 or 59 by 12-31-85 and who indicate by 12-31-85, their intent to commence retirement benefits at age 60 will be eligible for the retired employee medical benefit.

(Plant Closing Agreement, Docket #16, Attachment 2, p. 5). The language guarantees only the eligibility of individuals and does not state outright that the Agreement guarantees the "Retired Employee Medical Benefit" itself. However, a commonsense interpretation of the Agreement and Bemis's treatment of retirees tell us that such a guarantee was intended.

The Plant Closing Agreement does not define "retired employee medical benefit" or what this benefit entails anywhere in its language. Thus, in order for the "Retired Employee Medical Benefit" section of the Plant Closing Agreement to be given effect, it must incorporate a "Retired Employee Medical Benefit" provision from a separate document, such as the previous collective bargaining agreement. If not, the Agreement language ensuring "eligibility" would be meaningless because it would merely provide retiree eligibility for an undefined and unguaranteed benefit. Thus, logic requires that the Agreement incorporate a previous retiree health benefit guarantee not appearing within the five page Agreement.

-5-

Indeed, the plaintiffs provide evidence that the Plant Closing Agreement intends such an incorporation of previously guaranteed health benefits. The plaintiffs provide the affidavit of Charles Conrardy ("Conrardy"), a former UAW International Representative who represented the employees at the Hayssen plant in Sheboygan. (Conrardy Aff. ¶¶ 2-3, Docket #16, Attachment #1). Conrardy negotiated both the 1985 Plant Closing Agreement and the 1982 Collective Bargaining Agreement between Hayssen and the UAW. (*Id.* at ¶¶ 2-4, 10). Conrardy affirms that the 1982 Collective Bargaining Agreement includes Section 9.02, "Retired Employee Medical Benefit," which guarantees medical benefits to retirees as defined in Section 9.01 of that agreement. (*Id.* at ¶ 8). He attests that the 1985 Plant Closing Agreement incorporated these sections, as modified by the Sec. 4d eligibility language of the Plant Closing Agreement quoted above. (*Id.* at ¶ 14, 17). The court may consider this affidavit as part of its evaluation of class certification. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (stating that a judge may receive evidence, including by affidavit, to resolve disputes related to class certification).

Further, Bemis's actions suggest that the Plant Closing Agreement provides health benefit guarantees to pre-Agreement retirees. Bemis made no distinction between pre-Agreement and post-Agreement retirees in providing health benefits. All individuals receiving coverage from Bemis based on previous employment at the Hayssen Sheboygan plant, regardless of retirement date, receive the same Bemis

-6-

retiree medical plan. (Def.'s Mot. Opp. Class Cert. 3; Haberman Aff. ¶ 8). Bemis treats all retirees the same, suggesting that the same guarantee of health benefits applies.

Based on the aforementioned, the court declines to distinguish between those individuals retiring prior to November 5, 1985, and those retiring after. As a result, the court concludes that the plaintiff's figure of 50-53[2] class members is the appropriate starting point for its class certification determination.

The court now proceeds with its consideration of the Rule 23 requirements, beginning with "numerosity." The court finds that the putative class is sufficiently numerous when considered alongside the impracticality of joining suits of the individual members. The class members include individuals made eligible by employment at, and subsequent retirement from, a plant which closed in 1985. These health benefit recipients are elderly, having been born primarily in the 1910's and 1920's. (Haberman Aff., Docket #21, Ex. 1). Requiring individuals who are in their eighties and nineties to litigate separate cases arising from changes in their health benefits seems intuitively impractical. Separate litigation appears even more impractical when noting that the cases arise from the same modifications to their coverage, effected simultaneously by the same company, in alleged violation of the same 1985 Plant Closing Agreement. In addition, the number of participants is

---

[2]In their initial motion for class certification, Plaintiffs cite 50-53 as the number of potential class members. However, in their reply brief, the plaintiffs agree with representations made in the Haberman affidavit, submitted by Bemis, that the actual number of Hayssen retirees receiving coverage (and presumably constituting potential class members) is 62. (Pls.' Reply Br. 2).

reasonably numerous because it totals more than forty. *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006) ("Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met"). The court finds that the plaintiffs meet the Rule 23 "numerosity" requirement.

## II.    Commonality

Commonality pursuant to Rule 23 requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is generally satisfied by a common nucleus of operative fact. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Common nuclei of fact typically manifest where the defendant has engaged in standardized conduct towards putative class members. *See id.*

Bemis argues that the plaintiffs cannot establish commonality because the proof supporting liability and damages for the named plaintiffs does not support those of other class members. Specifically, Bemis asserts that the Agreement does not apply to certain putative class members and that different circumstances surround individual class members' eligibility for benefits and their damages calculations. Bemis also relies on *Sprague v. General Motors*, a 6th Circuit case, to argue that commonality does not exist in the instant case because retirees had to sign individual releases of "any and all claims."

However, despite Bemis's painfully deliberate distinctions, the court concludes that the requisite commonality exists. The claims of putative class members arise from standardized conduct – Bemis' reduction of members' health benefits in 2005 and 2007. Thus, the claims all arise from a "common nucleus of fact." The common nucleus is that Bemis previously provided the same health coverage to each putative class member, Bemis instituted the same unilateral changes to potential members' coverage at the same time, and the changes resulted in increased deductibles, co-pays and premiums for all potential class members.

Bemis's reliance on *Sprague* does not impact the court's analysis because the case is distinguishable. In *Sprague*, the district court certified a class of 50,000 General Motors early retirees and divided them into four subclasses based on the type, if any, of acceptance of early retirement forms they signed. 133 F.3d at 396-97. The court found that the claims lacked commonality because of the "myriad variations" of GM's statements to early retirees regarding benefits based on the different individuals making the representation, the particular special early retirement program that applied, the different GM facility involved, and the different time periods involved. *Id.* at 398. No such "myriad variations" arise in the instant case. Instead, the same health care benefits coverage applied to all putative class members prior to 2005, and the same modifications were instituted in 2005 and 2007.

As stated previously, this court makes no distinction between those members retiring before the effective date of the Agreement and those retiring after.

-9-

Therefore, the time of retirement and an individual "showing" of eligibility under the Agreement cannot undermine commonality. Bemis does not contest that each of the putative class members are currently receiving health benefits related to past employment at its Hayssen plant. Thus, no "eligibility" showing is required by individual participants because Bemis has effectively deemed everyone eligible for health benefits coverage. Contrary to Bemis' argument, the date on which the class members became eligible is immaterial. All members were covered at the time of the relevant conduct, the 2005 and 2007 reductions in benefits.

Finally, courts in this district have recognized that alleged violations of ERISA and LMRA resulting from reductions in promised retiree health benefits is an appropriate subject for class action treatment. *See Leannah v. Alliant Energy Corp*, __ F. Supp.2d __, 2009 WL 497128, at *1 (E.D. Wis. Feb. 26, 2009); *Senn v. United Dominion Indus.*, 951 F.2d 806, 811 (7th Cir. 1992), *rehearing en banc denied*, 962 F.2d 655 (7th Cir. 1992). As in other cases, class action certification is appropriate here because the legal issue raised in the complaint, whether Bemis's reduction of retiree health benefits breaches the Plant Closing Agreement, is common to the proposed class and fulfills the commonality requirement of Rule 23.

### III.   Typicality

Typicality pursuant to Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists when a plaintiff's claim arises from the "same event or

practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). This evaluation is closely related to commonality. *Id.*

Bemis's argument against typicality of the claims hinges, once again, on this court accepting its assertion that not all individuals currently covered by its health benefits plan are appropriate class members because they are not all covered by the 1985 Plant Closing Agreement. If the court does not distinguish between the putative class members in this way, which it does not, the class claims easily meet the typicality requirement. The class claims arise from the same conduct, Bemis' reduction in benefits in 2005 and 2007, and are based on the same legal theory, a breach of the Agreement. Contrary to Bemis's claims, the interests of the entire class would be advanced if the plaintiffs prevail on their own claim. For the plaintiffs to prevail, the court must determine that Bemis breached the Agreement in reducing their benefits, simultaneously establishing that Bemis breached the Agreement with regards to other class members.

## IV.  Adequacy

Adequacy, pursuant to Rule 23, requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To establish adequate representation, the court considers whether the plaintiff's attorney is qualified, experienced and generally able to conduct the proposed

-11-

litigation. *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). The court also considers whether the plaintiff has interests antagonistic to those of the class. *Id.* "Antagonistic or conflicting claims" between class members preclude fair and adequate representation by the class representatives. *Rosario*, 963 F.2d at 1018. Bemis presents only a brief argument against adequacy, asserting a conflict of interest between pre-Agreement retirees and post-Agreement retirees. However, the court does not distinguish the class members in this way and Bemis provides no explanation of why the interests of pre- and post-Agreement retirees conflict. Therefore, the court finds that no antagonistic claims exist which would preclude the plaintiffs from adequately representing the interests of the class as a whole. Further, the plaintiffs assert that counsel has extensive labor law experience and has prosecuted a similar case. This court has no reason to doubt the qualifications or competence of the plaintiffs' attorneys.

Thus, the plaintiffs meet all requirements of Rule 23(a) by establishing numerosity, commonality, typicality, and adequacy. The court now proceeds to an analysis under Rule 23(b).

### V.     Requirements of Rule 23(b)

To merit class certification, the plaintiffs must meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). However, once these four requirements are established, the plaintiffs must also satisfy one of the

conditions listed in Rule 23(b). The plaintiffs argue that they satisfy the requirements and should be certified as a class under either 23(b)(1) or 23(b)(2).

Rule 23(b)(1) provides for certification when 23(a) is satisfied and when prosecution of separate actions by individuals would create a risk of either:

> A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing that class, or
>
> B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). The plaintiffs assert that certification under this subsection is appropriate because individual lawsuits filed by the more than 50 putative class members may result in different court decisions on benefits, contrary to ERISA's prohibition on treating retirees differently from one another. Bemis responds by making a brief argument asserting the opposite. Bemis argues that certification of the class may result in conflicting court orders for coverage because the Plant Closing Agreement does not guarantee health benefits to the pre-Agreement retirees (presuming the court agrees with this conclusion). Therefore, if post-Agreement retirees like plaintiffs prevail, they would receive an order for coverage while the pre-Agreement retirees would not receive such an order.

Bemis's oft-repeated argument regarding applicability of the Agreement requires an oft-repeated response from the court. For class certification, the court does not distinguish between potential class member retirees currently receiving

-13-

health benefits from Bemis based on whether they retired pre- or post-Agreement. As a result, Bemis's single argument against application of Rule 23(b)(1) certification fails. Class certification pursuant to Rule 23(b)(1) is appropriate because Bemis may win in some cases and lose in others, generating contradictory obligations with regard to required coverage. Thus, the court finds that the plaintiffs satisfy 23(b)(1) because different outcomes may result if each retiree separately adjudicates his or her claim to challenge Bemis's reduction of health benefits. *See Witmer v. Acument Global Techs., Inc.*, Case No. 08-12795, 2009 WL 174916, at *5 (E.D. Mich. Jan. 26, 2009) (granting Rule 23(b)(1) certification to class of former employees and spouses claiming violation of CBAs and plant closing agreements arising from defendant termination of health coverage); *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 431 (N.D. Ohio 2008) (granting Rule 23(b)(1) certification for class of former employees, spouses, and dependents seeking to enjoin defendant employer from imposing cap on or requiring additional costs for retiree medical benefits); *Reese v. CNH Am. LLC*, 227 F.R.D. 483, 489 (E.D. Mich. 2005) (certifying Rule 23(b)(1) class of retirees and surviving spouses claiming continuing health care benefits under CBAs). Therefore, the court will certify the class under Rule 23(b)(1).

In addition, certification of the class under Rule 23(b)(2) is also appropriate. The rule states that a class action may be maintained if Rule 23(a) is satisfied and if:

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;

Fed. R. Civ. P. 23(b)(2). The plaintiffs allege that Bemis acted on grounds "generally applicable to the class" by instituting the same reductions in putative class members' health insurance benefits. Further, the plaintiffs seek injunctive relief from these changes. Based on these facts alone, Rule 23(b)(2) treatment would seem very appropriate. The difficulty arises, however, when the court considers that injunctive relief is just one of the three remedies requested by the plaintiffs. In addition to injunctive relief ordering Bemis to resume the previous health coverage, the plaintiffs also seek damages for the putative members' personal expenses resulting from the changes in coverage, as well as damages for mental distress and anguish. (Pls.' Compl. 8).

The monetary damages add a complicating layer to the analysis because Rule 23(b)(2) certification is only appropriate for a class requesting both injunctive relief and monetary damages when the monetary damages "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Lemon v. Operating Engineers Local 139*, 216 F.3d 577, 581 (7th Cir. 2000) (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)). Rule 23(b)(2) certification is impermissible unless the monetary damages sought are "incidental" to the injunctive relief sought. *Id.* Damages are "incidental" when the damage calculation is mechanical and does not require individual calculation such

-15-

that separate damages suits would be a waste of resources. *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005). In *Leannah*, a similar case this court recently addressed, the court determined that Rule 23(b)(2) treatment was appropriate for a class made up of early retiree participants in the defendant's health benefits plan whose premiums were raised by the defendant, despite the fact that the members sought monetary damages for out-of-pocket expenses caused by the health plan changes, because the damages were "incidental" to the requested injunctive relief. *See Leannah v. Alliant Energy Corp,* 09-CV-169, Class Certif. Order, Docket #33, Oct. 30, 2007. Therefore, if the plaintiffs sought only out-of-pocket expenses, no question would exist because this court already deemed such monetary damages to be "incidental." However, in the instant case, the plaintiffs also seek damages for mental distress and anguish. Thus, the court must determine whether the addition of these monetary damages renders the requested damages more than merely "incidental" and precludes Rule 23(b)(2) certification.

Though a close call, the court concludes that the monetary damages sought remain "incidental," despite the addition of damages for mental distress and anguish. Denying Rule 23(b)(2) class certification on the basis of seemingly minor damages for "mental anguish" caused by increased co-pays and decreased prescription drug coverage underestimates the importance of the injunctive relief the plaintiffs seek. Though damages for "distress" and "anguish" are linked to individual circumstances, the court does not believe that determination of such damages requires "complex

-16-

Case 2:08-cv-00090-PJG    Filed 05/28/09    Page 16 of 17    Document 50

individualized determinations" which preclude 23(b)(2) certification. *See Allison*, 151 F.3d at 415. Therefore, the court will certify the class under Rule 23(b)(1) and (b)(2).

Accordingly,

**IT IS ORDERED** that plaintiffs' motion to certify this case as a class action (Docket #12) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the following plaintiff class be and the same is hereby **CERTIFIED**:

> All persons who, as of December 31, 2004, were receiving health benefits from Bemis pursuant to the November 5, 1985 Hayssen/UAW Local 1423 and its closing agreement covering production and maintenance employees at Hayssen's Sheboygan facility.

**IT IS FURTHER ORDERED** that the named plaintiffs, Thomas Temme and Shirley Temme, shall be the class representatives, and plaintiffs' counsel, George F. Graf and Sandra Graf Radtke of Gillick Wicht Gillick & Graf, S.C., are appointed as counsel for the class under Fed. R. Civ. P. 23(g).

Dated at Milwaukee, Wisconsin, this 28th day of May, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge