# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

THOMAS TEMME and SHIRLEY TEMME, individually
and as a class of persons similarly situated

              Plaintiffs,

v.                                                       Case No. 08-CV-090

BEMIS COMPANY, INC.,

              Defendant.

_____

# ORDER

Plaintiffs Thomas Temme and Shirley Temme bring this class action lawsuit against defendant Bemis Company, Inc. ("Bemis"), asserting claims under § 301 of the Labor Management Relations Act (LMRA) and § 502 of the Employee Retirement Income Security Act (ERISA). The claims arise from Bemis's alleged failure to provide life-time retiree health benefit coverage at the levels promised in a 1985 Plant Closing Agreement ("the Agreement"). The parties now file cross-motions for summary judgment. The plaintiffs ask the court to enter summary judgment against Bemis as to liability and to enter a permanent injunction. Bemis asks the court to enter summary judgment in its favor and dismiss the case with prejudice. Based on the reasoning set forth below, the court will grant Bemis's motion for summary judgment and deny the plaintiffs' motion.

## BACKGROUND

The plaintiff class members in this suit are former employees of the Hayssen Manufacturing Company ("Hayssen") plant in Sheboygan, Wisconsin, and their spouses, surviving spouses and dependents (hereinafter, collectively referred to as "the plaintiffs" or "the retirees"). Defendant Bemis acquired Hayssen prior to the Sheboygan plant's closing in 1985. (Plaintiff's Proposed Findings of Fact ¶ 1, hereinafter "PFOF," Defendant's Proposed Findings of Fact ¶ 1, hereinafter "DFOF"). The bargaining unit employees of the Hayssen plant were represented by the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and its Local 1423 ("the Union"). (PFOF ¶ 2). In June 1985, the existing labor agreement between Hayssen and the Union expired and the parties failed to reach a successor agreement. (DFOF ¶ 3). The Union then commenced a strike against the company. (DFOF ¶ 4). Instead of negotiating a new labor agreement, Hayssen decided to close its facility. (DFOF ¶ 5). Hayssen and the Union conducted bargaining on the matter and entered into a Plant Closing Agreement ("Plant Closing Agreement" or "the Agreement"), which was executed on November 5, 1985. (PFOF ¶ 3, DFOF ¶¶ 5-7). The Plant Closing Agreement terminated the employment of union employees, terminated the strike, and terminated the bargaining relationship between the Union and the company. (DFOF ¶¶ 9-11). Among other items, the Agreement provided that certain qualifying individuals would be eligible for a retired employee medical benefit. (DFOF ¶¶ 13-14).

The retirees have received continuous health insurance coverage from Bemis for more than 25 years, despite Bemis's sale of Hayssen in 1997. (PFOF ¶ 10, D.'s Resp. PFOF ¶ 10). However, effective January 1, 2005, Bemis transferred the Hayssen retirees' health coverage from a Blue Cross/Blue Shield health plan to a CIGNA health plan. (DFOF ¶ 21). The change in plans resulted in increased deductibles and new prescription drug co-pays. (PFOF ¶ 23). Bemis instituted additional modifications to the retirees' coverage effective January 1, 2007, when it eliminated prescription drug coverage. (PFOF ¶ 25). When Bemis informed the retirees of this change, it also notified them that they could purchase AARP drug programs at their own expense as an alternative. (PFOF ¶ 26). The plaintiffs assert that the changes Bemis instituted to their coverage breach the Plant Closing Agreement and violate ERISA and the LMRA.

## LEGAL STANDARD

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that

party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255. In considering cross-motions for summary judgment, the court is obliged to view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion under consideration is made. *Bassiouni v. F.B.I.*, 436 F.3d 712, 721 (7th Cir. 2006).

## ANALYSIS

The plaintiffs ask the court to enter summary judgment against Bemis as to liability and to enter a permanent injunction requiring Bemis to provide class members with coverage at the levels agreed upon in 1985. The plaintiffs claim that the Plant Closing Agreement promises the retirees $50.00 deductibles and full prescription drug coverage, though the Agreement itself does not mention these coverage levels. Instead, the plaintiffs assert that they are entitled to the level of coverage provided for in the 1982 Collective Bargaining Agreement (CBA) between the company and the Union; a CBA which expired four months prior to the signing of the Plant Closing Agreement.

The Plant Closing Agreement does not explicitly promise continued retiree medical benefits, nor does it specify precise levels of any health coverage.

-4-

Nonetheless, the plaintiffs read a promise for lifetime, unalterable benefits into the Agreement based on suggestive phrases and omissions in the contract's language. They point to language ensuring "eligibility" for a retired employee health benefit, omission of the "Retired Employee Medical Benefit" section of the previous CBA from the Agreement's list of obligations that had been "fully satisfied"; and the absence of a duration clause or termination clause in the Agreement. As further support for their claims of irreducible medical benefits for life, the plaintiffs note that Bemis provided health coverage to the retirees at an unchanged level for twenty years - from 1985 until Bemis instituted the first coverage changes in 2005.

In contrast, Bemis argues that the court should enter summary judgment in its favor because the Plant Closing Agreement made no explicit guarantees of lifetime retiree health coverage, nor did it promise unchanged coverage or endorse a specific plan design. Bemis denies that the level of coverage it provided in the past shows that it promised lifetime benefits or obligates the company to continue providing the same level of coverage into the future.

Thus, the court must first determine whether the Plant Closing Agreement promised lifetime medical benefits for the retirees and, second, determine whether a promise of lifetime benefits requires Bemis to continue providing $50.00 deductibles and full prescription drug coverage under that Agreement. These are issues of contract interpretation. *See Diehl v. Twin Disc, Inc.*, 102 F.3d 301, 305 (7th

-5-

Case 2:08-cv-00090-PJG   Filed 08/26/09   Page 5 of 16   Document 51

Cir. 1996). Thus, they are particularly appropriate for resolution through summary judgment.

The court initially addresses the question of whether the Plant Closing Agreement promises lifetime benefits to the retirees. Medical benefits, like those at issue in this case, are classified as "welfare" benefits under ERISA. *Bland v. Fiatallis North America, Inc.*, 401 F.3d 779, 783 (7th Cir. 2005). Unlike pension benefits, welfare benefits do not automatically vest. *Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 481 (7th Cir. 2006). Instead, health benefits only vest if an agreement or contract provides for lifetime entitlement. *Id.* Because vested benefits are not legally required, and because they become forever unalterable, a contract must express an intent to vest in "clear and express language." *Bland*, 401 F.3d at 784. When interpreting collective bargaining agreements, courts apply a presumption that retiree health benefits do not vest under the CBA unless it contains explicit contractual language to this effect. *Cherry*, 441 F.3d at 481. If the CBA does not include such express language, courts presume that health benefits terminate when the collective bargaining agreement ends. *Id.*

The case law requiring express language in order to vest lifetime health benefits involves claims under collective bargaining agreements, not claims under plant closing agreements. However, these statements of law inform the court's analysis. The court finds that the requirement for an explicit statement of intent to

-6-

provide lifetime benefits applies to the instant case, though the plaintiffs' claims arise from a plant closing agreement.[1]

The Seventh Circuit has distinguished between CBA cases and plant closing agreement cases when applying the presumption against vesting. However, the court has relied upon express contract language even in cases arising from closing agreements, suggesting that explicit guarantees of lifetime benefits are required under both types of contract. In *Zielinski v. Pabst Brewing Company*, a case involving retiree claims under a closing agreement, the Seventh Circuit found that the agreement created a contractual obligation to provide benefits for life to the plaintiffs. 463 F.3d 615, 617 (7th Cir. 2006). The court briefly addressed the presumption against vesting health benefits, but stated that the presumption "has reference mainly to suits to enforce collective bargaining agreements." *Id.* at 617. The court acknowledged that it previously applied the presumption against vesting in another case involving retiree claims under a plant closing agreement, *Diehl v. Twin Disc, Inc.*, 102 F.3d 301 (7th Cir. 1996). *Id.* at 617. However, the court distinguished the earlier plant closing agreement case and its application of the presumption by explaining that the earlier case involved a short-term agreement,

---

[1] The plaintiffs assert in their brief that Seventh Circuit law relating to vesting presumptions is inapplicable to the instant case because it involves a plant closing agreement and not a contract of set duration. (Pls.' Br. Mot. Summ. J. 5). However, the cases the plaintiffs cite do not stand for this precise proposition. The cases discuss the vesting presumption in the context of CBA's or state that the presumption is applicable to contracts of set duration. *See Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 565 (7th Cir. 1995); *Senn v. United Dominion Indus.*, 951 F.2d 806, 816 (7th Cir. 1992); *Bidlack v. Wheelabrator*, 993 F.2d 603, 607 (7th Cir. 1993)(en banc). However, none of the cited authority discusses plant closing agreements or states that the vesting presumption is inapplicable when interpreting these agreements. *See id.*

-7-

making the plant closing agreement similar to a collective bargaining agreement. *Id.* at 617-18. The court reasoned that a presumption against vesting applies mainly to collective bargaining agreements because they are short-term agreements presumed not to create rights or duties continuing beyond the agreement's termination date. *Id.* The court stated that plant shutdown agreements, in contrast, have no end date and rights originating in these agreements carry forward indefinitely as a result. *Id.*

Despite these statements, *Zielinski* does not eliminate the need for "clear and express" language to create a contractual obligation for lifetime benefits under a plant closing agreement. The court did state that the presumption "mainly" refers to suits enforcing collective bargaining agreements, but did not declare that it *only* refers to suits enforcing collective bargaining agreements. The court conspicuously declined to state that the requirement for explicit language does not apply to vesting health benefits under a closing agreement.

Instead, the court's analysis suggests that explicit language is necessary before the court can find a guarantee of lifetime benefits. In *Zielinski*, the Seventh Circuit relied upon the presence of clear language in the closing agreement stating that the defendant company "shall continue to provide the health and welfare benefits for retirees" in finding that the plant closing agreement created an explicit contractual obligation for continuous benefits. 463 F.3d at 616-17. ("It is hard to read 'shall continue' otherwise than as creating a contractual obligation that indeed

-8-

continues until six months after the last retiree dies."). Based on the plant closing agreement's clear promise, the Seventh Circuit reasoned that the benefits were provided for life because the closing agreement did not include a termination date. *Id.* at 617-18. *Zielinski* does not repudiate the need for clear language indicating an intent to vest benefits for life. To the contrary, it seems to confirm the importance of such language.

The need for express language is problematic for the plaintiffs here because the Plant Closing Agreement executed by Hayssen and the Union makes no clear promise to continue providing health benefits. Instead, the plaintiffs rely on omissions from the Agreement and an indirect reference to a health benefit for retirees. The plaintiffs cite a section of the Plant Closing Agreement referring to "eligibility" for health benefits to support their argument for irreducible, lifetime benefits. The eligibility section is the only provision of the Agreement to mention health benefits for retirees. The section reads in relevant part:

> Retired Employee Medical Benefit
> Individuals who attain age 60 and have at least six years of continuous service by 12-31-85, and who elect to commence their retirement benefits by 12-31-85, will be eligible for the retired employee medical benefit. Individuals who attain age 58 or 59 by 12-31-85 and who indicate by 12-31-85, their intent to commence retirement benefits at age 60 will be eligible for the retired employee medical benefit.

(Plant Closing Agreement, Docket #16, Attachment 2, p. 5). However, this section does not expressly state that Bemis promises to continue providing a retiree health benefit. Indeed, a guarantee of eligibility for retiree medical benefits does not

-9-

constitute explicit language vesting the health benefits themselves. *See Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 604 (7th Cir. 1989) (concluding that retiree health benefits did not vest under provisions of a collective bargaining agreement and rejecting plaintiffs' reliance upon a provision that referred to a retiree's eligibility for benefits). The language merely guarantees that particular qualifying individuals will be eligible for the retiree employee benefit while it is offered. It does not promise that such a benefit will *always* be offered.

The court acknowledges that the "eligibility" provision lacks a definition for, or explanation of, the retired employee medical benefit it references. The plaintiffs argue that this absence requires incorporation of a "Retired Employee Medical Benefit" provision from a separate document. They suggest that the Plant Closing Agreement incorporates portions of the expired CBA, including Section 9.02, entitled Retired Employee Medical Benefit, and Section 9.01, entitled Hospital, Surgical and Medical Insurance. Section 9.01 is the source of the plaintiffs' claims for an unalterable level of coverage because the provision specifies that the benefits plan includes full prescription drug coverage and $50.00 deductibles. The plaintiffs support their argument for incorporation by citing the following language from the Plant Closing Agreement:

> This agreement shall supersede and void all prior written and oral agreements between the parties, including without limitation the labor Contract, pension and insurance agreements, except and only to the extent that reference to the same may be necessary to effectuate the provisions of this agreement.

-10-

(Plant Closing Agreement, Docket #16, Attachment 2, p. 6). The plaintiffs argue that the Agreement must incorporate retired employee medical benefit provisions of the expired CBA in order for the "eligibility" language in the Plant Closing Agreement to be effectuated. Thus, the promise of continued health benefits for retirees must be incorporated along with the CBA's promise of $50.00 deductibles and full prescription drug coverage.

However, the fact remains that the phrase "will be eligible for the retired employee medical benefit" does not explicitly promise to continue benefits. The language promises eligibility for a benefit that may or may not continue to be offered. The fact that Bemis provided a particular level of benefits for twenty years does not vest lifetime benefits. *See Barnett v. Ameren Corp.*, 436 F.3d 830, 835 (7th Cir. 2006). The plant closing agreement itself must clearly make this promise.

The inadequacy of the "eligibility" language to create a contractual obligation is clear when the language is compared to plant closing agreement language that *did* vest retiree health benefits. As previously mentioned, the Seventh Circuit considered the issue of vesting health benefits under plant closing agreements in *Diehl* and *Zielinski*. Like the instant case, *Diehl* and *Zielinski* each involved a class action lawsuit brought by retirees and arose from changes to their health benefits made by the respective defendants. *Diehl*, 102 F.3d at 302-03; *Zielinski*, 463 F.3d at 616-17. In *Diehl*, the Seventh Circuit found that the plaintiffs had a vested right to medical benefits for their lifetimes under the agreement based on an "explicit and

seemingly unambiguous provision" in the shutdown agreement stating that the retired employees "shall, notwithstanding any provision of the Insurance Agreement..., be entitled for the lifetime of the pensioner... to the life insurance and hospitalization, medical and surgical expense benefit coverages as provided under the Extension of Coverages and Integration of Benefits provisions of Sections 5 and 6 of the Insurance Agreement." 102 F.3d at 306. There is no question that the plant closing agreement in *Diehl* promised lifetime benefits based on this express language.

Similarly, in *Zielinski* the court found that the plant closing agreement language vested the plaintiffs' medical benefits, entitling them to benefits for life. 463 F.3d at 617-18. The court based its conclusion on language in the closing agreement stating that the defendant company "shall continue to provide the health and welfare benefits for retirees [and their spouses and dependents] described in" the prescription drug provision of the collective bargaining agreements. 463 F.3d at 616, 618. Though not as explicit as the "for the lifetime of the pensioner" language in *Diehl*, the shutdown agreement in *Zielinski* clearly stated that the company guaranteed continuing health benefits. In contrast, the Plant Closing Agreement at issue here contains no such explicit statement guaranteeing continued benefits.

Further, even if the Plant Closing Agreement incorporates the portions of the expired CBA defining a retired employee health benefit, the Agreement still does not include a promise for lifetime benefits. Collective bargaining agreements are, by

their nature, intended to be limited term agreements. *See Zielinski*, 463 F.3d at 618 (noting that CBA's are "short-term agreement"). The presumption that CBA's do not intend to vest lifetime health benefits is based on this idea. In the absence of language to the contrary, CBA's create only limited-term obligations because they are limited term agreements. Therefore, the Plant Closing Agreement cannot incorporate language meant to apply for a limited duration and then convert this same language into a promise of lifetime benefits. The Agreement does not provide an explicit guarantee of benefits for life, thus, the court cannot find that such a promise exists.

Because the Plant Closing Agreement does not promise to provide the retirees with lifetime benefits, altering their specific levels of coverage cannot constitute a breach of the Agreement. Nonetheless, the court will briefly address the second issue in the suit, whether increasing deductibles and eliminating full prescription drug coverage breaches the Plant Closing Agreement.

An explicit promise to provide benefits for life would not insulate the plaintiffs from all modifications to their coverage. The Seventh Circuit has not found an irreducible level of health benefits even when explicit vesting language creates a contractual obligation for lifetime benefits. In *Zielinski*, the court found that the plaintiffs were entitled to the prescription drug coverage vested by and incorporated into the shutdown agreement. 463 F.3d at 618-19. However, the court also found that the plant closing agreement language was not intended to create an "inflexible

obligation." *Id.* at 618. The court concluded that the shutdown agreement entitled the plaintiffs to lifetime prescription drug benefits, but at a level adjusted for changes to which the parties "would have agreed" if they had considered the duration of the commitment. *Id.* at 621. The court then remanded the case to the district court for a determination of benefits "reasonably commensurate" with those provided in the 1971 health plan. *Id.* Similarly, in *Diehl*, the Seventh Circuit found that the plaintiff retirees were entitled to medical benefits under a plant shutdown agreement, but remanded the issue to the district court to determine whether the modified retiree health benefits were "reasonably commensurate" with previously promised coverage. 102 F.3d at 311. Thus, the court did not preclude the respective defendants from changing the specific coverage promised to the plaintiff retirees. As a result, even if the Plant Closing Agreement at issue in the instant case provided for lifetime health benefits, this does not necessarily preclude Bemis from making the modifications to coverage that it instituted in 2005 and 2007.

Moreover, as previously noted, CBA's are intended and understood to be short-term agreements. The parties did not negotiate the 1982 CBA and its specific levels of coverage with the intent that those levels would be irreducible into the indefinite future. To the contrary, at the time the Agreement was negotiated, the $50.00 deductibles and full drug coverage appearing within Section 9.01 of the CBA were applicable only for the limited term of the contract. Thus, requiring Bemis to provide lifetime, irreducible coverage does not reflect the intent of the parties at the

-14-

time they negotiated the CBA's coverage levels. An intent to provide unalterable benefits is not reflected in the Plant Closing Agreement either, because the Agreement does not mention lifetime coverage, much less specify exact deductible amounts. Indeed, the court is skeptical that Bemis (or rather, Hayssen) would negotiate for precise coverage levels and deductible amounts binding the company for the lifetime of the longest-lived retiree – a period that has already spanned 24 years. Finally, the court notes that requiring Bemis to provide unalterable benefits at the generous level of $50.00 yearly deductibles per family and full prescription drug coverage seems imprudent given the economic realities of skyrocketing health care costs.

## CONCLUSION

The court concludes that the Plant Closing Agreement does not guarantee the plaintiffs lifetime benefits because the Agreement does not explicitly promise to provide health benefits for life.[2] Further, even if the Agreement did make such a promise, the contract does not necessarily require Bemis to provide the precise level of benefits appearing in the expired CBA. The court is sympathetic to the difficulties faced by the plaintiffs in paying an increased portion of their healthcare

---

[2] The court notes that this conclusion is inconsistent with a finding the court made for the purposes of class certification. In its class certification order, the court assumed that the Plant Closing Agreement incorporated the Retired Employee Health Benefit from the 1982 CBA and guaranteed the benefit. *See Temme v. Bemis Company, Inc.*, No. 08-CV-090, 2009 WL 1505120, at *2-3 (E.D. Wis. May 28, 2009). Based on this determination, the court concluded that any promise of benefits for those retiring after the execution of the Plant Closing Agreement applied equally to those individuals retiring prior to the signing of the Agreement, impacting the court's analysis of numerosity, commonality, and typicality. *Id.* at *3-4. However, after considering the parties' briefs and conducting its summary judgment analysis, the court concludes that the Plant Closing Agreement does not promise lifetime health benefits to the retirees because the Agreement does not explicitly make this promise.

costs while on a fixed income. However, the court cannot read a promise for lifetime, unalterable health benefits into a Plant Closing Agreement whose language makes no clear and express promise of such.

Accordingly,

**IT IS ORDERED** that the plaintiffs' motion for summary judgment and a permanent injunction (Docket #14) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (Docket #18) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** on its merits.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of August, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge