THOMAS TEMME and SHIRLEY
TEMME, individually and as a class of
persons similarly situated,

     Plaintiffs,

     v.                              Case No. 08-C-90

BEMIS COMPANY, INC.,
a Missouri corporation,

     Defendant.

---

# DECISION AND ORDER

---

## NATURE OF CASE

On January 28, 2008, the plaintiffs, Thomas and Shirley Temme, filed this class action law suit against defendant Bemis Company, Inc. (Bemis) asserting claims under § 301 of the Labor Management Relations Act (LMRA) and § 502 of the Employee Retirement Income Security Act (ERISA). The plaintiffs represent a class of former production workers and their spouses who have been receiving their health care coverage through Hayssen Manufacturing Company (Hayssen) and its successor, defendant Bemis, as a result of a 1985 Plant Closing Agreement. In the original complaint, the plaintiffs alleged that the defendant breached the plant closing agreement when it changed deductibles and eliminated prescription drug coverage in 2005 and 2007.

In an August 26, 2009, Order, United States District Judge J.P. Stadtmueller concluded that the plant closing agreement did not guarantee the plaintiffs lifetime benefits and, therefore, the defendant did not breach the agreement with its changes in 2005 and 2007. Judge Stadtmueller granted summary judgment to the defendant and dismissed the case. The plaintiffs appealed the order. On October 1, 2009, the defendant completely eliminated all

medical benefits being provided to the plaintiffs. On appeal, the Court of Appeals for the Seventh Circuit reversed the grant of summary judgment to the defendant and remanded the case for further proceedings consistent with its opinion. Subsequent to the remand, the parties consented to United States Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.) and the case was assigned to this court.

On February 25, 2011, with leave of the court, the plaintiffs filed an amended complaint. The amended complaint adds allegations that the defendant breached the 1985 Plant Closing Agreement when it eliminated all retiree benefits for the Hayssen retirees.

## MOTION FOR A PRELIMINARY INJUNCTION

"An equitable, interlocutory form of relief, 'a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc., 549 F.3d 1079, 1085 (7th Cir. 2008) (quoting Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 389 [7th Cir. 1984]). In determining whether to issue a preliminary injunction, "a district court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." Girl Scouts of Manitou Council, Inc., 549 F.3d at 1085-86.

To survive the threshold phase, a party seeking a preliminary injunction must demonstrate that 1) absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to a final resolution of its claims; 2) traditional legal remedies would be inadequate; and 3) its claim has some likelihood of success on the merits. Id. at 1086; see also, Promatek Industries, Ltd. v. Equitrac Corp., 300 F.3d 808, 812 (7th Cir. 2002). If the moving party fails to demonstrate any one of these three threshold requirements, the court must deny the injunction. Girl Scouts of Manitou Council, Inc., 549 F.3d at 1086 (citing Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 11 [7th Cir. 1992]). If, however, the moving party can satisfy these

conditions, the court then proceeds to the balancing phase of the analysis.  <u>Girl Scouts of Manitou Council, Inc.</u>, 549 F.3d at 1086.

In this balancing phase, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief."  <u>Id.</u>  "In so doing, the court employs a sliding scale approach: '[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'"  <u>Id.</u> (quoting <u>Roland Mach. Co. v. Dresser Indus., Inc.</u>, 749 F.2d 380, 387 [7th Cir. 1984]).  The court's balancing process also considers any effects that granting or denying the preliminary injunction would have on the public interest.  <u>Girl Scouts of Manitou Council, Inc.</u>, 549 F.3d at 1086.

## **BACKGROUND FACTS**

In 1985, Hayssen Manufacturing (Hayssen), the predecessor of the defendant, closed its Sheboygan plant.  At the time the production employees were represented by the United Auto Workers and its Local 1423. Hayssen and the United Auto Workers (UAW) entered into a closing agreement covering the production employees, the 1985 Plant Closing Agreement. Hayssen provided for a fully-paid health plan (covering whatever Medicare did not) with prescription drug coverage and with the only co-pays being two $50 deductibles per family per year.  Hayssen and then the defendant continued to provide this coverage at these levels through 2004.

In 2005, the defendant reduced these benefits, raising the deductible from $50 to $250 and required substantial co-pays for prescription drugs that varied based on whether the drug was generic, formulary or brand.  In 2007, the defendant eliminated all prescription drug coverage.

On May 28, 2009, Judge Stadtmueller issued an order certifying a class under Fed. R. Civ. P. 23(b)(1) and (b)(2). The plaintiffs, Thomas and Shirley Temme, were certified as class representatives. On August 26, 2009, on cross-motions for summary judgment, Judge Stadtmueller granted the defendant's motion for summary judgment and dismissed the case. Judge Stadtmueller concluded that the defendant did not breach the Closing Agreement, holding that "[b]ecause the Plant Closing Agreement does not promise to provide the retirees with lifetime benefits, altering their specific levels of coverage cannot constitute a breach of the Agreement." (Order of August 26, 2009, at 13). The court determined that, "the Agreement does not guarantee the plaintiffs lifetime benefits because the Agreement does not explicitly promise to provide health benefits for life." Id. at 15.

As noted, the plaintiffs appealed Judge Stadtmueller's order and the Seventh Circuit Court of Appeals reversed and remanded for further proceedings. The court of appeals determined that the closing agreement and the last collective bargaining agreement (CBA) between the parties had to be read together. The court stated that "[o]nly by reading the CBA can meaning be given to the 'retired employee medical benefit' for which retirees are eligible." Temme v. Bemis Company, Inc., 622 F.3d 730, 736 (7th Cir. 2010). The court held "that the parties intended to grant retirees a lifetime entitlement to medical benefits." Id. at 737.

## ANALYSIS

The plaintiffs seek an order requiring the defendant to restore the benefits it eliminated in 2009, plus provide a basic Medicare Part D prescription drug benefit. The plaintiffs assert that a preliminary injunction is proper because they are likely to succeed on the merits, they will suffer irreparable harm without an injunction, there is no adequate remedy at law, and the balance of harms weighs in favor of granting the injunction.

In response, the defendant maintains that the plaintiffs have no likelihood of success on the merits. The defendant asserts that the reservation of rights clause in the master insurance contract gave it the right to modify and even terminate the plan. The defendant further asserts that even if there is no reservation of rights clause permitting termination of the retired employee medical benefit, the scope of retired employee benefits is much smaller than the benefit claimed by the plaintiffs. Specifically, the defendant maintains that the Court of Appeals for the Seventh Circuit held that it had no obligation to pay premiums and that it has no obligation to provide the same benefits that existed in 1985. The defendant further asserts that the plaintiffs will not experience irreparable harm without the requested preliminary injunction as it is not obligated to pay premiums. Finally, the defendant asserts that the plaintiffs do not lack an adequate remedy at law and that the balancing of the hardships favor it.

With respect to the defendant's assertion that the reservation of rights clause in the master insurance contract gave it the right to terminate the retirees' lifetime benefit, the appellate court explained:

> If the master insurance contract contained an express reservation of rights, it is possible that Hayssen could have drastically modified the level of benefits provided to its employees while the CBA controlled the terms of the relationship between Hayssen and its employees. But, the fact that a final closing agreement incorporated or relied on language in a previous collective bargaining agreement does not mean it adopted, unmodified, any language in any underlying insurance contract. Cf. Diehl, 102 F.3d at 306-07 ("[T]he Shutdown Agreement itself was an independent contract, supported by separate consideration and capable of modifying or supplanting prior contractual arrangements."). If the parties intended lifetime medical benefits for retirees, then that promise could have abrogated any right Bemis may have had to terminate coverage under its master insurance contract. Moreover, as proof that this reservation of rights clause existed, Bemis points to a 1990 insurance contract and "deduces" that the relevant 1984 master contract included the same reservation of rights. Haberman Aff. PP 4-6. The 1984 contract itself however, is not the record. Temme disputes the existence of any such clause in the relevant contract. Pl.'s Br. in Resp. to Def.'s Motion for Summ. J. at 12-13. Whether the 1984 master

insurance contract included a reservation-of-rights clause and whether the parties intended the clause--if any exists--to be abrogated or modified by the vested nature of the medical benefits are issues to be decided by a factfinder.

Temme v. Bemis Co., 622 F.3d 730, 738 (7th Cir. 2010).  In making the same argument in its brief in response to the plaintiff's motion for preliminary injunction, the defendant cites to the same evidence the court of appeals questioned could establish the presence of a reservation-of rights clause in the 1984 master insurance contract.  Additionally, the court stated that [i]f the parties intended lifetime medical benefits for retirees, then that promise could have abrogated any right [the defendant] may have had to terminate coverage under its master insurance contract."  Id.

Moreover, contrary to the defendant's assertion, the Court of Appeals for the Seventh Circuit did not hold that it had no obligation to pay premiums.  The court stated:

Bemis also argues that the plaintiffs have signed releases waiving all claims arising under the CBA. Upon each employee's termination, a document was signed releasing all claims under the previous CBA, and Bemis argues this includes any rights secured by § 9.02. A better understanding of the general release is that it relinquished any claim under the CBA that was not separately secured by the Closing Agreement; that the Closing Agreement secured the right to a lifetime benefit, but that the CBA defined the scope of the right. The release specifically lists an amount of payment received by each signee. The payment is the "total pay due" for payments such as severance, unused vacation pay and holidays. It also specifically lists "premium payments for continued medical coverage either as a terminated employee or a future retiree." A thorough reading of the release undercuts Bemis's argument. The release acknowledges that terminated employees and retirees will continue to receive medical coverage, but releases Bemis from making any more premium payments for that coverage.

Temme v. Bemis Co., 622 F.3d at 737.  The Closing Agreement allowed for terminated employees and future retirees to continue their present medical coverage by paying the full monthly premium for a period of twelve months or until they became covered under another plan.  Specifically, the Agreement provided:

> Employees terminated under the provisions of this agreement with the exception of those eligible employees who apply for retirement benefits by 12/31/85, will be allowed to continue their present Blue Cross/ Blue Shield Medical coverage by paying the full monthly premium for a period of 12 months (1/1/86 to 1/1/87) or until they become covered by another medical insurance plan, whichever is sooner.

(Answer, Exh. 1 at 4). The release acknowledged that the employer would no longer pay the premium payments for either the terminated employee or the future retiree. The release waived all claims arising under the CBA that "was not separately secured by the Closing Agreement." Temme v. Bemis Co., 622 F.3d at 737. The Closing Agreement secured the retirees' entitlement to lifetime medical benefits and, therefore, the release did not waive such claims. Id. "The language contained in the Closing Agreement clearly entitles retirees to an eligibility for a specific medical benefit." Id. Thus, the plaintiffs are likely to succeed on the merits of their amended complaint.

In addition to showing a likelihood of success on the merits, the plaintiffs also must establish that they will suffer irreparable harm if the preliminary injunction is not granted and that they lack an adequate remedy at law. The plaintiffs assert that they do and will continue to suffer irreparable harm because the defendant has stopped paying their medical insurance premiums.

The retirees, having been retired for more than 25 years, are old. The plaintiff, Tom Temme, at 83, is one of the youngest. Approximately one-quarter of the class has died since this case started. In addition to being old, the retirees have minimal financial resources. They have little or no pensions. The plaintiffs have adequately established that the elimination of all health benefits has had a severe impact on the retirees, both economic and psychological.[1]

---

[1]When the defendant eliminated their medical supplement plan in October 2009, Tom and Shirley Temme could not afford the $400 a month required to purchase one. Their sole medical coverage is Medicare A & B which provides basic coverage, but exposes them to large co-pays and deductibles in the event they require extensive medical care or hospitalization. In addition, their large expenses for medical and prescription drug

The economic and psychological impact constitutes irreparable harm. The plaintiffs also lack an adequate remedy at law as the they are old and lack medical insurance. Moreover, it is likely that some retirees will pass away prior to a final judgment is entered.

The next phase of the preliminary injunction analysis is the balancing of harms phase. The plaintiffs' age and lack of medical insurance and the inherent risk in that weigh heavily in their favor. Furthermore, "'[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'" Girl Scouts of Manitou Council, Inc., 549 F.3d at 1086. Additionally, the public interest lies in favor of the plaintiffs. Public policy favors enforcing contractual agreements.

In sum, the plaintiffs have demonstrated a likelihood of success on the merits with respect to the allegations of the amended complaint. They further have demonstrated that they will suffer irreparable harm if the preliminary injunction is not granted and that there is no adequate remedy at law. Furthermore, the balance of harms weighs in the plaintiffs' favor. Accordingly, this court will grant the plaintiff's motion for a preliminary injunction, requiring the defendant to restore the benefits it eliminated in 2009 plus provide a basic Medicare Part D prescription drug benefit.

## RULE 65(c) BOND

Rule 65(c) of the Federal Rules of Civil Procedure provides that: "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Although the language of the rule is mandatory, "the case law has somewhat weakened the force of the 'no order shall issue' language of the rule."

---

coverage have been devastating to them as they both suffer from medical conditions requiring continuing medical care – Mr. Temme has had a stroke and Mrs. Temme has Alzheimer's and complications from glaucoma.

Reinders Bros., Inc. v. Rain Bird Eastern Sales Corp., 627 F.2d 44, 54 (7th Cir.1980) (quoting

Wayne Chemical, Inc. v. Columbus Agency Serv. Corp., 567 F.2d 692, 701 [7th Cir. 1977]).

Thus, "[u]nder appropriate circumstances bond may be excused, notwithstanding the literal

language of Rule 65(c)." Wayne Chem., Inc., 567 F.2d at 701; Habitat Education Center v.

United States Forest Service, 607 F.3d 453, 458 (7th Cir. 2010).

The "purpose of an injunction bond is to compensate the defendant, in the event he

prevails on the merits, for the harm that an injunction entered before the final decision caused

him." Ty, Inc. v. Publ'ns, Inc., 292 F.3d 512, 517 (7th Cir. 2002). Based on the court of

appeals' decision and the defendant's continued reliance on the same evidence, the court

finds that there is little risk that the defendant will be wrongfully enjoined by the injunction.

Additionally, given the financial condition of the plaintiffs and their inability to pay a substantial

bond, no security is required.

## CONCLUSION

NOW, THEREFORE, IT IS ORDERED that the plaintiffs' motion for preliminary

injunction be and hereby is **granted.** (Docket # 78).

Dated at Milwaukee, Wisconsin this 18th day of April, 2011.

BY THE COURT:

    s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge